## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1·18-CR-261 |
| | ) | |
| v. | ) | |
| | ) | ( KANE , J.) |
| DONNA SUMMERLIN, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### I N D I C T M E N T

**FILED**
HARRISBURG, PA

AUG 0 8 2018

PER _____
DEPUTY CLERK

THE GRAND JURY CHARGES:

### COUNT 1
### Conspiracy to Commit Wire Fraud and Mail Fraud
(Title 18, United States Code, Section 1349)

### Background

At times relevant to this Indictment:

### Advance-Fee Schemes

1.     Fraudsters operating both domestically and abroad, use mass-marketing consumer fraud schemes to swindle the American public.   One commonly employed scheme is known an advance-fee

scheme.   To effect an advance-fee scheme, the fraudsters initiate contact with a victim, most commonly an elderly or vulnerable person, through the United States mail, telephone, email, or social media. Once contact is made, the fraudsters use a fake persona and promise victims cash prizes, lottery or sweepstakes winnings, merchandise, loans, or other payments.   The fraudsters tell the victims that in order to collect their purported award, they first have to pay taxes, fees, and other associated costs.   The victim is then directed to send cash, checks, or money orders via the United States mail, or other delivery service, and/or they are told to transfer money through their financial institution or a money transfer business directly to a co-conspirator.

2.     Two common areas that foreign fraudsters operate from are West Africa and the United Kingdom.   To help them perpetrate their frauds, West African fraudsters employ co-conspirators in the United States known as "Money Mules" to receive the fraud-induced money transfers, checks, money orders, and cash sent by the victims, and to forward the proceeds to the fraudsters in West Africa and/or Europe.   A "Money Mule" thus helps the fraudsters conceal the ownership and

control of the fraud proceeds.   A "Money Mule" is typically compensated for his/her services by retention of an agreed upon percentage of the fraud proceeds.

3.      Western Union Financial Services, Inc. (Western Union) and MoneyGram International (MoneyGram) are global money transfer companies.   In addition to bank-to-bank wires, West African fraudsters commonly request that victims and/or Money Mules send funds abroad using Western Union and MoneyGram.   Between the years 2012 and 2016, over 50,000 American fraud victims sent funds through Western Union and MoneyGram to the United Kingdom and Nigeria.

4.      The defendant, DONNA SUMMERLIN, worked as a domestic "Money Mule" for an advance-fee scheme, and at times pertinent to this Indictment, DONNA SUMMERLIN resided in the Southern District of Indiana.

5.      In her role as a "Money Mule," DONNA SUMMERLIN received fraud-induced funds from victims across the United States and sent victim funds to co-conspirators located domestically as well as abroad in Nigeria and the United Kingdom.

6.   The defendant, DONNA SUMMERLIN, at times pertinent to this Indictment maintained and/or had access to forty-five accounts at twenty-one different domestic financial institutions with branches located in the state of Indiana.   DONNA SUMMERLIN deposited, withdrew, and transferred victim funds in each account.

7.   The defendant, DONNA SUMMERLIN, at times pertinent to this Indictment, received funds from at least 120 victims pursuant to this advance-fee scheme, for a total of over $1,200,000.

## The Conspiracy

8.   From on or about April 10, 2012, and continuing to on or about September 16, 2016, within the Middle District of Pennsylvania, the Southern District of Indiana, and elsewhere, the defendant,

DONNA SUMMERLIN,

knowingly and willfully combined, conspired, confederated, and agreed with other persons, known and unknown to the Grand Jury, to commit an offense against the United States, that is:

a. to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses,

representations, and promises through use of the United States mail and private couriers, in violation of Title 18, United States Code, Section 1341, mail fraud; and

b. to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343, wire fraud.

## Manner and Means

9.     The manner and means by which DONNA SUMMERLIN, and others sought to accomplish the object of the conspiracy included, among other things, the following:

   a. It was part of the conspiracy that a co-conspirator would initiate contact with a victim via email, text message, telephone relay call, or Facebook.

b. Once a co-conspirator successfully contacted a victim, a co-conspirator would inform the victim that he/she had won a lottery or sweepstakes prize, or that he/she was eligible for a government grant or an investment opportunity.

c. A co-conspirator would then tell the victim that in order to receive their purported award, they would be required to make an initial investment, and/or they were obligated to pre-pay taxes, fees, and other monetary penalties.

d. A co-conspirator would then advise the victim to send a cash or check payment via FedEx, United States Postal Service ("USPS"), or UPS, or to initiate a bank-to-bank transfer, and/or to use a money transfer business to transfer funds to DONNA SUMMERLIN, and/or other co-conspirators typically located within the United States.

e. Once DONNA SUMMERLIN received funds from victims, she would either send the entire amount, or a portion of the amount received, to co-conspirators living domestically, or living abroad, primarily in Nigeria and the United Kingdom.

f.  The victims largely did not recover any of their funds, nor did they ever receive their purported lottery or sweepstakes prize, government grant, or the investment funds that they were promised by the co-conspirators.

## Overt Acts

10.    In furtherance of this conspiracy and to effect and accomplish the objects of the conspiracy, DONNA SUMMERLIN, and one or more of the co-conspirators, committed, and caused to be committed, among others, the following overt acts in the Middle District of Pennsylvania, the Southern District of Indiana, and elsewhere:

### Victims E.C. and B.C.

a.  On or about October 1, 2012, an unindicted co-conspirator emailed E.C. and B.C., a deaf couple residing in Hanover, PA, indicating that they had won a government grant designed to assist the deaf.   After the initial email solicitation, co-conspirators maintained communication with E.C. and B.C. through Facebook and Skype until approximately January

-7-

2014. In those communications, unindicted co-conspirators informed E.C. and B.C. that they were obligated to pre-pay costs for the purported grant in order to receive the full amount of the grant.

b. From on or about October 2, 2012, to on or about December 13, 2013, co-conspirators prompted E.C. and B.C. to mail twenty-five (25) cashier's checks, personal checks, money orders, and envelopes containing cash, from Hanover, Pennsylvania to **DONNA SUMMERLIN** in Fortville, Indiana using the United States Postal Service ("USPS"), for an aggregate total of approximately $500,000.

c. Between October 9, 2012 and March 26, 2013, **DONNA SUMMERLIN** deposited twenty-two (22) checks and money orders from E.C. and B.C. into her various bank accounts, to include: PNC Bank Account #4620989807 ("PNC Account"), JPMC Bank Account #129556870 ("JPMC Account"), Huntington Bank Account #02554865728 ("Huntington Account"), Forum Bank Account #2464924 ("Forum Account"),

AB Bank Account #1127005301 ("AB Account"), ONB Account #122558538 ("ONB Account"), and MSB Bank Account #6467731 ("MSB Account").

d. Between October 22, 2012, and March 26, 2013, DONNA SUMMERLIN wire transferred approximately $199,000 of E.C. and B.C's money to co-conspirators living abroad, to include the following:

    i.   On or about November 7, 2012, DONNA SUMMERLIN deposited a check from E.C. and B.C. in the amount of $30,000 into her JPMC Account, and on or about November 8, 2012, DONNA SUMMERLIN transferred $30,000 from her JMPC Account to an unindicted co-conspirator located in the United Kingdom.

    ii.   On December 14, 2012, DONNA SUMMERLIN deposited a $20,000 check from E.C. and B.C. into her JPMC Account and on December 19, 2012, DONNA SUMMERLIN transferred $20,000 from

her JMPC Account to an unindicted co-conspirator located in the United Kingdom.

iii. On January 4, 2013, DONNA SUMMERLIN deposited a $20,000 check from E.C. and B.C. into her JPMC Account and on January 10, 2013, DONNA SUMMERLIN transferred $20,000 to an unindicted co-conspirator located in the United Kingdom.

e. Additionally, on or about October 22 and October 24, 2012, co-conspirators directed E.C. and B.C. to send $52,000 in funds, via bank-to-bank transfer, to DONNA SUMMERLIN's JPMC Account, and on October 23 and October 29, 2012, DONNA SUMMERLIN wired $25,000 and $27,000, respectively, from her JPMC Account to a co-conspirator located in the United Kingdom.

### Victim C.W.

f. On or about August 12, 2013, an unindicted co-conspirator contacted C.W., a deaf individual residing in Quest Haven,

-10-

Utah, through Facebook.   The unindicted co-conspirator told C.W. that he was a government official and presented her with an opportunity to purportedly build her retirement account.

g.  The unindicted co-conspirator informed C.W. that she would have to first invest money before she could maximize her retirement account, and on or about August 12, 2013, unindicted co-conspirators directed C.W. to mail **DONNA SUMMERLIN** two cashier's checks, totaling $39,000.

h.  On August 12, 2013, **DONNA SUMMERLIN** deposited C.W.'s $19,000 check into her Forum Account, and deposited C.W.'s $20,000 check into her STAR Bank Account #12759979 ("STAR Account").

i.  On August 14, 2013, **DONNA SUMMERLIN** attempted to wire transfer $18,000 from her STAR Account to an unindicted co-conspirator located in the United Kingdom, but the wire was rejected by her financial institution, and on August 21, 2013, **DONNA SUMMERLIN** withdrew $9,000 in cash from her Forum Account.

<u>Victim M.C.</u>

j. On or about August 12, 2013, an unindicted co-conspirator
   contacted M.C., a deaf individual residing in Portland, Oregon,
   through Facebook.   The unindicted co-conspirator informed
   M.C. that she had won a lottery/sweepstakes prize and that she
   [M.C.] would have to pre-pay taxes and fees in order to claim
   her purported prize.

k. On or about August 12, 2013, unindicted co-conspirators
   directed M.C. to transfer $1,500 to DONNA SUMMERLIN
   using Western Union in two $750 increments, and on August
   14, 2013, unindicted co-conspirators directed M.C. to transfer
   $22,000 in funds via bank-to-bank wire to DONNA
   SUMMERLIN's ONB Account.

l. On August 15, 2013, DONNA SUMMERLIN withdrew $12,000
   in cash from her ONB Account, and on August 16, 2013,
   DONNA SUMMERLIN initiated a domestic wire transfer in
   the amount of $10,000, to an unindicted co-conspirator.

-12-

### Victims J.S. and G.S.

m. On or about February 16, 2015, a co-conspirator contacted J.S. and G.S., a couple residing in Zionsville, Pennsylvania, through Facebook to notify them that they had won a Facebook lottery prize. J.S. and G.S. were told that they would have to pre-pay fees in order to claim their purported prize.

n. On or about February 16, 2015, co-conspirators directed J.S. and G.S. to send (19) MoneyGram money orders to DONNA SUMMERLIN, totaling $18,500. On February 20, 2015, DONNA SUMMERLIN deposited $9,500 in MoneyGram money orders from J.S. and G.S. into her FCFCU Account, and on February 23, 2015, DONNA SUMMERLIN withdrew $9,500 in cash from her FCFCU Account. Further, on February 25, 2015, DONNA SUMMERLIN deposited $9,000 in MoneyGram money orders from J.S. and G.S. into her FCFCU Account and on February 27, 2015, DONNA SUMMERLIN withdrew $6,520 in cash and on March 2, 2015, DONNA SUMMERLIN transferred $2,528.04 to WorldRemit London GB.

o. On February 24, 2015, DONNA SUMMERLIN sent a $9,480 outgoing wire transfer from her FCFCU Account to unindicted co-conspirator 1's Citizens Bank account ("Citizens Account").

p. On March 4, 2015, unindicted co-conspirator 1 sent a $10,000 outgoing wire transfer from his Citizens Account to an unindicted co-conspirator located abroad.

q. From on or about March 26, 2015, to on or about June 23, 2015, unindicted co-conspirators instructed J.S. and G.S. to send cashier's checks to unindicted co-conspirator 1, totaling $80,995, and unindicted co-conspirator 1 deposited said checks into his Citizens Account.

r. From on or about March 26, 2015, to on or about June 26, 2015, unindicted co-conspirator 1, withdrew in cash, and/or transferred approximately $84,500 from his Citizens Account.

<u>Victim J.Z.</u>

s. On or about June 8, 2015, an unindicted co-conspirator contacted J.Z., an individual residing in Goldsboro, North Carolina through Facebook.   The unindicted co-conspirator

-14-

informed J.Z. that she [J.Z.] was the recipient of a government grant and that she would have to pre-pay fees in order to receive the full grant.   On or about June 8, 2015, an unindicted co-conspirator prompted J.Z. to mail DONNA SUMMERLIN a cashier's check from Goldsboro, North Carolina, to Fortville, Indiana in the amount of $35,000.

t. On June 8, 2015, DONNA SUMMERLIN deposited J.Z.'s check into her FFB Bank Account #5311672793 ("FFB Account"), and on June 9, 2015, DONNA SUMMERLIN withdrew $8,000 in cash and obtained a cashier's check in the amount of $27,000, made payable to an unindicted co-conspirator.

<u>Victim C.T.</u>

u. On or about June 11, 2015, an unindicted co-conspirator contacted C.T., a hearing-impaired individual residing in Lowman, New York, through email and informed her that she had won a government grant and would be obligated to pre-pay costs associated with the grant in order to receive the total amount.

v. On or about June 11, 2015, unindicted co-conspirators instructed C.T. to transfer $18,000 in funds to DONNA SUMMERLIN via bank wire transfer to DONNA SUMMERLIN's GBS Account ($7,000) and to her FFB Account ($11,000).

w. On June 12, DONNA SUMMERLIN withdrew $12,600 in cash from her GBS Account.   On July 6 and July 7, DONNA SUMMERLIN obtained cashier's checks drawn on her FFB Account in the amounts of $2,500 and $8,800, respectively, made payable to an unindicted co-conspirator.

### Victim J.V.

x. On or about January 5, 2016, an unindicted co-conspirator contacted J.V., an individual residing in Covington, Louisiana, through Facebook and informed her that she has a won a Facebook sweepstakes prize.   The unindicted co-conspirator further told J.V. that in order to claim her price, she would have to pre-pay associated costs.

-16-

y. On or about January 5, 2016, unindicted co-conspirators directed J.V. to transfer $12,000 in funds to DONNA SUMMERLIN's TFB Bank Account #68001028 ("TFB Account") via bank wire transfer.   On January 6 and January 7, 2016, DONNA SUMMERLIN withdrew $6,000 and $5,985, respectively, from her TFB Account.

### Foreign/Domestic Fund Transfers

z. From on or about January 2, 2012, to on or about September 16, 2016, DONNA SUMMERLIN used Western Union and MoneyGram to send over $70,000 domestically and abroad, to Nigeria and the United Kingdom.

aa.   From on or about April 10, 2012, to on or about January 7, 2016, DONNA SUMMERLIN, initiated over one hundred (100) bank wire transfers to unindicted co-conspirators, totaling approximately $846,000. Out of the total of approximately $846,000, approximately $200,000 was sent via an international wire transfer, approximately $114,000 was sent through Fed Wire, approximately $356,000 was sent via bank

-17-

wire domestically, and approximately $176,000 was withdrawn

in the form of cashier's checks made payable to unindicted co-

conspirators.

All in violation of Title 18, Unites States Code, Section 1349.

## COUNT 2

### Conspiracy to Launder Monetary Instruments
### (Title 18, United States Code, Section 1956(h))

THE GRAND JURY FURTHER CHARGES:

11.    The allegations contained in paragraphs 1-7 and 9-10 within

Count 1 of this Indictment are incorporated in Count 2 as if fully set

forth herein.

12.    From on or about April 10, 2012, and continuing to on or

about September 16, 2016, within the Middle District of Pennsylvania,

the Southern District of Indiana, and elsewhere, the defendant,

### DONNA SUMMERLIN,

knowingly and willfully combined, conspired, confederated, and agreed

with other persons, known and unknown to the Grand Jury to commit

offenses against the United States, in violation of Title 18, United

States Code, Section 1956(a)(2)(B)(i), that is: to transport, transmit, and

transfer, and attempt to transport, transmit, and transfer a monetary

instrument or funds involving the proceeds of specified unlawful

activity, that is, mail fraud, in violation of Title 18, United States Code

Section 1341, and wire fraud, in violation of Title 18, United States

Code Section 1343, from a place in the United States to or through a

place outside the United States, knowing that the funds involved in the

transportation, transmission, and transfer represented the proceeds of

some form of unlawful activity and knowing that such transportation,

transmission, and transfer was designed in whole or in part to conceal

and disguise the nature, location, source, ownership, and control of the

proceeds of specified unlawful activity, in violation of Title 18, United

States Code, Section 1956(a)(2)(B)(i);

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

THE GRAND JURY FURTHER FINDS:

1.    The allegations contained in Counts 1 and 2 of this

Indictment are hereby realleged and incorporated by reference for the

purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461(c).

2.     Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Sections 1349, or 1956(h), the defendant,

DONNA SUMMERLIN,

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s) and any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

   a.     All proceed of the crime, at least but not limited to $100,000 in U.S. currency.

3.     If any of the property described above, as a result of any act or omission of the defendants:

   a.     cannot be located upon the exercise of due diligence;

-20-

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

████████████████

FOREPERSON, GRAND JURY

DAVID J. FREED
UNITED STATES ATTORNEY

By: _____
CHELSEA B. SCHINNOUR
ASSISTANT U.S. ATTORNEY

_____8/8/18_____
DATE

-21-